# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## No. 19-1994

### JEFFREY WILLIAM PAUL, Petitioner

### v.

### UNITED STATES, Respondent.

### RESPONSE IN OPPOSITION TO MOTION TO FILE A SUCCESSIVE § 2255 MOTION

The United States of America, by and through undersigned counsel, hereby submits this response in opposition to petitioner Jeffrey William Paul's request to file a successive motion for relief under 28 U.S.C. § 2255, filed May 14, 2019 ("Mot.").

### STATEMENT

On June 22, 1995, Jeffrey William Paul and an acquaintance, Trinity Ingle, followed 82-year-old Sherman Williams to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Williams, and then shot him in the head and shoulder, killing him.

On June 23, 1997, a jury in the Western District of Arkansas convicted Paul of aiding and abetting first degree murder within the special territorial jurisdiction of the United States (18 U.S.C. § 1111) and firearm murder during and in relation

1

to a crime of violence (18 U.S.C. § 924(j)). *United States v. Paul*, 217 F.3d 989, 994-95 (8th Cir. 2000). Following a penalty phase trial, the jury recommended a death sentence. *Id*. at 995. Paul appealed, this Court affirmed, and the Supreme Court denied certiorari. *Id.*, at 1005, *cert. denied*, 534 U.S. 829 (2001).

In 2002, Paul filed a motion for relief under 28 U.S.C. § 2255, which the district court denied. *Paul v. United States*, crim. no. 96CR60022-001, Dkt. 322 (W.D. Ark. Jan. 31, 2005). Paul appealed, and this Court granted a COA. Following briefing, this Court affirmed the denial of collateral relief in a published opinion, from which the Supreme Court denied certiorari. *Paul v. United States*, 534 F.3d 832 (8th Cir. 2008), *cert. denied*, 558 U.S. 828 (2009).

Paul proceeded to file a series of pro se motions in the trial court under § 2255, among other authority, all of which that court denied. *United States v. Paul*, crim. no. 96CR60022-001, Dkt. nos. 362, 365, 366, 367, 368, 370, 371, 375, 378, 379, 381, 382, 383, 384, 385, 386, 388, 390, 391, 392 (W.D. Ark). In 2013, Paul moved pro se for relief under 28 U.S.C. § 2255 in the United States District Court for the Southern District of Indiana. *Paul v. Superintendent*, case no. 2:13-cv-00304-WTL-MJD, Dkt. # 1 (S.D. Ind. Aug. 20, 2013). The Southern District of Indiana subsequently appointed counsel, who filed a motion for relief under 28 U.S.C. § 2241, which remains in abeyance pending the Supreme Court's resolution of *United States v. Davis*, case no. 18-431. *See Paul v. Superintendent*, case no.

2

2:13-cv-00304-WTL-MJD, Dkt. 220 (S.D. Ind. March 20, 2019).

Separately, and without the assistance of counsel, Paul sought permission to file a successive motion for relief under § 2255, which this Court denied. *Paul v. United States*, case no. 13-2987 (8th Cir. Oct. 1, 2013). The following year, Paul petitioned pro se for an extraordinary writ, which this Court denied. *In re: Paul*, case no. 14-1832 (8th Cir. Apr. 22, 2014). Paul also petitioned pro se for an extraordinary writ in the Seventh Circuit, which that court denied. *Paul v. Lawrence*, case no. 16-2220 (7th Cir. May 26, 2016). With the assistance of counsel, Paul asked this Court for a second time for permission to file a successive § 2255 motion, which it denied. *Paul v. United States*, case no. 16-2330 (8th Cir. Aug. 5, 2016).

On May 14, 2019, Paul, for a third time, moved for permission to file a successive § 2255 motion, and this Court ordered the instant response.[1]

## ARGUMENT

### PAUL HAS NOT IDENTIFIED AN ARGUMENT PREMISED ON RETROACTIVELY APPLICABLE OR APPOSITE AUTHORITY

Paul seeks permission to file a successive § 2255 motion in which he proposes to attack his trial counsel's performance under *McCoy v. Louisiana*, 138

---

[1] Unrelated to his attacks on the judgment, Paul intervened in *Roane, et al. v. Gonzales*, D.C. Dist. Ct. case no. 05-CV-2337, a lawsuit that challenges the federal execution protocol on Eighth Amendment grounds.

S. Ct. 1500 (2018).  In essence, Paul intends to pursue a claim that trial counsel

failed to heed his personal objectives for the defense.  Mot. 6-10.  Paul cannot

succeed in this claim because he cannot demonstrate that *McCoy* applies

retroactively in collateral proceedings.  Moreover, he cannot establish that counsel

undermined his expressed objectives for the defense.

 "Congress has severely limited successive § 2255 motions for post-

conviction relief."  *Winarske v. United States*, 913 F.3d 765, 767 (8th Cir. 2019).

This Court may not authorize the filing of a successive motion absent a prima facie

showing that (1) there is "newly discovered evidence that, if proven and viewed in

light of the evidence as a whole, would be sufficient to establish by clear and

convincing evidence that no reasonable factfinder would have found the movant

guilty"; or (2) his conviction or sentence is unlawful under "a new rule of

constitutional law, made retroactive to cases on collateral review by the Supreme

Court, that was previously unavailable."  28 U.S.C. § 2255(h).  Though he attempts

to utilize the second exception, Paul fails to make the requisite showing.

 A. *McCoy* does not Apply Retroactively

 This Court may not authorize a successive § 2255 motion based on a new

rule of constitutional law absent a prima facie showing that it applies retroactively

to cases on collateral review.  *See Donnell v. United States*, 826 F.3d 1014, 1015

(8th Cir. 2016) (citing *Kamil Johnson v. United States*, 720 F.3d 720, 720 (8th Cir.

2013) (per curiam)).[2]  "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."  *See Tyler v. Cain*, 533 U.S. 656, 663 (2001); *see also Rodgers v. United States*, 229 F.3d 704, 706 (8th Cir. 2000) (quoting with approval *In re Vial*, 115 F.3d 1192, 1197 (4th Cir. 1997), for the proposition that only the Supreme Court can announce the retroactive applicability of a new constitutional rule "either by explicitly so stating or by applying the rule in a collateral proceeding").

Paul has not identified any statement or action by the Supreme Court indicating *McCoy* applies in a § 2255 case.  *McCoy* arose on direct appeal and does not contain any indication of applicability to collateral actions, a fact Paul appears to acknowledge, albeit tacitly.  The *McCoy* opinion and the three Supreme Court orders that cite it all stem from direct appeals.  *See Garza v. Idaho*, 139 S. Ct. 738 (2019); *Clark v. Louisiana*, 138 S. Ct. 2671 (2018); *Hashimi v. United States*, 139 S. Ct. 377 (2018).  Unsurprisingly, none of these decisions makes any announcement about the retroactive applicability of the *McCoy* doctrine to cases on collateral review, or otherwise provides a basis for permitting reliance in § 2255

---

[2] The government agrees that *McCoy* satisfies some of the criteria in § 2255(h)(2)—*i.e.*, it announced a rule of constitutional law under the Sixth Amendment, *see* 138 S. Ct. at 1507-08, and that rule is "new" because it was not dictated by precedent existing at the time Barrett's conviction became final, *see Chaidez v. United States*, 568 U.S. 342, 347 (2013).

cases.[3]

The Supreme Court has repeatedly held that new constitutional rules of criminal procedure do not apply to cases that have become final. *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)). The Court will not likely hold that *McCoy* applies retroactively. Only two types of rules "fall outside this general bar on retroactivity"—substantive rules and watershed rules of procedure. *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion)). *McCoy* did not announce a "substantive" rule because it did not "narrow the scope of a criminal statute by interpreting its terms," or "place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (quoted with approval in *Burton v. Fabian*, 612 F.3d 1003, 1009 (8th Cir. 2010)).

Paul unpersuasively argues that *McCoy* satisfies the "watershed" new rule exception to *Teague*. Mot. 8-9. To qualify as such, a watershed "rule must be necessary to prevent an impermissibly large risk of an inaccurate outcome and

---

[3] The Supreme Court has also recognized that a new rule can be "made retroactive" "with the right combination of holdings" over the course of multiple cases. *See Tyler v. Cain*, 533 U.S. 656, 663-66 (2001). But Paul does not argue that this principle applies here, and with good reason: no combination of Supreme Court holdings "logically dictate the retroactivity of the new rule" announced in *McCoy*. *See Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir. 2014) (quoting *Tyler*, 533 U.S. at 668 (O'Connor, J., concurring)).

must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016) (quoting *Whorton v. Bockting*, 549 U.S. 406, 418 (2007)) (internal quotation marks omitted). The Supreme Court has never identified a rule that meets this description and has called it "unlikely that any such rules have yet to emerge." *Id.* (quoting *Whorton*, 549 U.S. at 417) (internal quotation marks omitted).

The narrow rule announced in *McCoy* does not buck this trend. *McCoy* did not introduce a procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 313 (plurality opinion). *McCoy* barred defense counsel from independently conceding a client's culpability at the guilt phase of a capital trial—a rule that "is not designed to protect the defendant from erroneous conviction." *McCoy*, 138 S. Ct. at 1511 (quoting *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017)). Rather, the rule guarantees "the defendant's right to make the fundamental choices about his own defense" and otherwise guards against effects "too hard to measure." *Id.*

*McCoy* protects a defendant's dignity and autonomy, not the accuracy of conviction. *See* 138 S. Ct. at 1508. The decision will not likely impact the accuracy of convictions: it appears apt to arise in capital cases in which the prosecution possesses such overwhelming evidence that defense counsel recognizes an admission of guilt best serves the client's interests at the penalty

phase. *See id.* at 1512 (recognizing the government's case against McCoy was "strong" and counsel "reasonably" believed a concession of guilt minimized the likelihood of a death sentence); *id.* at 1514-15 (Alito, J., dissenting) (explaining that no competent attorney would admit guilt of all charged offenses in a non-capital case and that, even in a capital case, no attorney would admit guilt over a defendant's objection unless the evidence was overwhelming).

Indeed, this case exemplifies the difficulties of demonstrating that the *McCoy* doctrine implicates the accuracy of the trial's fact finding. As this Court found, "several of Paul's acquaintances testified that Paul confessed his involvement in the crime to them. Each of these witnesses gave similar accounts of what Paul had told them about the offense." *Paul*, 217 F.3d at 944. Following his arrest, Paul confessed to an FBI agent. *Id*. at 995. Confronted with that evidence, counsel's in-court concessions might have trenched upon Paul's prerogative to author his own defense strategy, but they did not implicate the accuracy of the conviction. Because concessions in the face of overwhelming evidence do not create any particular risk of unjust conviction, Paul cannot show the rule against them enjoys "watershed" status. *See Schriro*, 542 U.S. at 355-56.

Though *McCoy* identifies a "structural" error, unamenable to prejudice analysis, it still does not announce a watershed rule. An error can qualify as "structural" not because of its importance or centrality to the accuracy of a criminal

8

trial, but simply because "its effects are too hard to measure." *McCoy*, 138 S. Ct. at 1511; *see United States v. Gonzalez–Lopez*, 548 U.S. 140, 150 (2006). Accordingly, the Supreme Court has recognized that "[c]lassifying an error as structural does not necessarily alter our understanding of . . . bedrock procedural elements" in a way that would trigger the watershed-rule exception. *Tyler*, 533 U.S. at 666 n.7. And this Court has acknowledged as much: "newly acknowledged constitutional errors that are structural in nature, or that relate to fundamental requirements of due process, may still fall short of the watershed status contemplated in *Teague*." *Jarrett v. United States*, 266 F.3d 789, 791 n.1 (8th Cir. 2001) (quoting *Tyler*, 533 U.S. at 666 n.7); *see also United States v. Hopkins*, 920 F.3d 690, 703 (10th Cir. 2019); *Rodriguez v. Chandler*, 492 F.3d 863, 866 (7th Cir. 2007). Though *McCoy* identifies a "structural" error, that aspect of the opinion does not suffice to elevate the holding into the first ever watershed procedural rule.

Accordingly, Paul has not and cannot show that the rule in McCoy applies retroactively to § 2255 cases.

B. <u>*McCoy* does not Assist Paul</u>

Assuming *arguendo* that *McCoy* applied retroactively on collateral review, Paul is still not entitled to authorization. He has not made a prima facie showing that his proposed motion "relies on" the rule in *McCoy* in the manner required by § 2255(h)(2). Under § 2255(h)(2), a movant must establish not only that the

proposed motion contains a new, previously unavailable rule of constitutional law made retroactive by the Supreme Court, but that the claim "relies on" that new rule. *See Donnell v. United States*, 826 F.3d 1014, 1016 (8th Cir. 2016) (holding a "claim 'relies on' a new rule when it is 'based on' a new rule"). At the authorization stage, the prisoner need only make a prima facie showing of reliance. *See Walker v. United States*, 900 F.3d 1012, 1014 (8th Cir. 2018).

This Court has stated that the prima facie threshold requires "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013). But the Court has not suggested that a movant discharges that burden merely by invoking a new rule. *See Winarske*, 913 F.3d at 768 ("[S]imply citing a new rule is not enough."); *Donnell*, 826 F.3d at 1016 ("Mere citation of a new rule in a successive motion is not sufficient to justify certification."). Rather, the movant must show that "[t]he new rule [has] a nexus to the right asserted in the motion," *Donnell*, 826 F.3d at 1016—that is, that the new rule "substantiates" the claim. *See Henry v. Spearman*, 899 F.3d 703, 706 (9th Cir. 2018). In assessing whether that nexus exists, a court may ask whether "it is clear as a matter of law, and without the need to consider contested evidence, that the petitioner's identified constitutional rule does not apply to the petitioner's situation." *Evans-Garcia v. United States*, 744 F.3d 235, 240 (1st Cir. 2014). If so, the court "should deny certification." *Id.*

Paul cannot make a prima facie case of error under *McCoy*, which held "that a defendant has the right to *insist* that counsel refrain from admitting guilt." 138 S. Ct. at 1505. The record in *McCoy* left no ambiguity as to the defendant's effective insistence. "Throughout the proceedings, [McCoy] insistently maintained he was out of State" during the murders, which he attributed to corrupt police officers. *Id*. at 1506. He informed the trial court that his relationship with appointed counsel had "broken down irretrievably" and he obtained permission to proceed pro se until his parents could retain an attorney. *Id*. When informed, two weeks before trial, that the retained attorney intended to concede guilt, McCoy furiously insisted the attorney pursue acquittal. *Id*. On the eve of trial, McCoy sought to terminate counsel, who asked that the court relieve him if the defendant secured another attorney. *Id*. The court denied the request while stating that counsel had the power to determine the aims of the defense. *Id*. Consistent with that advice, counsel admitted during opening statement that the jury could not reasonably conclude McCoy had not killed the victims. *Id*.

In contrast to the clear statements that animated the *McCoy* decision, Paul does not identify any evidence, in or out of the record, that he forbade his attorneys from conceding his culpability. Instead, he observes that he refused to plead guilty and accept a life sentence. Mot. at 6. Neither of those actions brings this case within *McCoy*. Unlike the defendant in that case, Paul made repeated pre-trial

admissions to acquaintances and confessed the charged murder to law enforcement. During post-conviction litigation Paul alleged that trial counsel offered him inadequate "advice and counsel regarding his decisions concerning the plea in the case,"[4] implying that he was subjectively willing to accept a life sentence if appropriately informed of his litigation risks. *See Paul v. United States*, crim. no. 96CR60022-001, Dkt. 271 at 306. Although Paul alleged any number of errors by his trial counsel, he nowhere asserted that they ignored his expressed direction not to concede guilt. He fails to include any evidence that he ever expressed such aims for his defense, and the transcript does not reflect any effort on his part to interrupt counsel's opening statement. *See* Trial. Tr. Vol. 2, pp. 489-99.

In short, Paul does not contend that counsel failed to pursue his defense objectives, much less that they overtly conceded guilt over his objection (the actual issue in *McCoy*). "[A]s a matter of law, and without the need to consider contested evidence," the constitutional rule in *McCoy* "does not apply to [Paul's] situation." *See Evans-Garcia*, 744 F.3d at 240. Accordingly, this Court should not permit Paul to pursue any claim under *McCoy* in a successive § 2255 motion even if that rule were retroactive to cases on collateral review.

---

[4] Elsewhere, Paul alleged trial counsel labored under a conflict of interest and attributed his rejection of the plea offer to his supposed lack of competency. *Paul v. United States*, crim. no. 96CR60022-001, Dkt. no. 271 at 251 & 303.

## CONCLUSION

Based on the foregoing reasoning and authority, the government respectfully urges this Court to deny Paul's request to file a successive § 2255 motion.

Dated: June ___, 2019.

Respectfully submitted,

DUANE KEES
United States Attorney,
Western District of Arkansas

By: */s/ Mark W. Webb*
    Mark W. Webb
Assistant U. S. Attorney
Ark. Bar Number 77141
414 Parker Avenue
Ft. Smith, AR  72901
Phone:  (479) 494-4060
Fax:  (479) 441-0569
Email:  mark.webb@usdoj.gov

BRIAN A. BENCZKOWSKI
Assistant Attorney General

By: */s/Jeffrey B. Kahan*
JEFFREY B. KAHAN
Deputy Chief, Capital Case Section
Penn. Bar Number 93199
U.S. Dept. of Justice
1331 F. Street, NW; 6th Fl.
Washington, D.C. 20530
(202) 305-8910
(202) 353-9779 fax

**CERTIFICATE OF ECF FILING AND DELIVERY**

I, hereby certify that on June 10, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Movant:

Mr. Shawn Nolan
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106

I hereby certify that I caused a true and correct copy of the foregoing document to be mailed via the United States Postal Service on June 10, 2019, to the following:

**Not Applicable** as Defendant Has Counsel

*S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN

**ADDITIONAL CERTIFICATION**

I hereby certify as follows:

1. Pursuant to FRAP 32(g), the length of the attached documents complies with the word limits applicable to motions. The text of this response is 3078 words.

Dated: this 10th day of June 2019:

*S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN