USCA 8th cir. —

Jeffery Paul 10517042
USP Terre Haute, IN.
PO Box 33
Terre Haute, IN
47808

(In Rem) Capital Case — Death Sentence —

No. 19-1994

(Pg.1)

FILED
JUL 01 2019
MICHAEL GANS
CLERK OF COURT

Jeffery William Paul, Petitioner
V.
United States, Respondent

(Attached)
(16 pgs.)

— Emergency (Pro Se) Correspondence —
Legal Letter to the Court —

RECEIVED
JUL -1 2019
U.S. Court of Appeals
Eighth Circuit - St. Paul, MN

Dear Sirs;

Please note that I received Copy of the govt. Reply to my Petition for Certificate of Appealibility; Permission for Second or Successive §2255 Habeas Motion (&I need to interject... See. pg. 1; 2.

The US Attorneys office alleges that I never gave my Trial Lawyers instructions to Support my Innocence (&c that appellate Counsel doesn't claim that to Support My appeal under New USSCt Law Controlling the McCoy issue; McCoy v. Louisiana 138 Sct. 1500 (2018) - thats NOT TRUE.

Please see. Pg. 3 @14 that appellate Counsel Clearly asserted that I denied guilt (&/ demanded)

to Plead Not Guilty; which I did, see. Pg. 5; ②) further, The US Attorney claims that I did not deny I committed the crime (aggravated murder); which is false because I repeatedly attempted to maintain perspective that I was only a witness during the FBI interview, see. Pg. 6; ④, in Pre-trial preparations, assisted investigators identify exculpatory forensic evidence which should've been a determinant factor if presented correctly, see. Pg. 7 — further, I presented strong defense alibis on State Related charges & was found NOT-GUILTY of Conspiracy &, attempt to Commit Robberies w/ the Co-defendant I was ultimately Convicted with on the Case before you, both cases featured the SAME govt. witness testimony. from Gary Rogers, who was successfully impeached once, but allowed to Continue to testify, see. Pg. 8 — Also; Multiple witnesses (4); who provided hearsay testimony, were given immunity from crimes, gave conflicting accounts of conversations & admittedly did not speak w/ FBI until contacted by the agents because they did NOT believe comments from me were inculpatory 1st person comments;

see. Pg. 9.

further; Despite the fact that I rejected the Govt's Plea Bargain because it would require admission of guilt; & leave me in Prison for a crime I didn't commit; Trial Counsel repititiously admitted guilt to 1st degree Murder (& asked for a life sentence under 2nd degree Murder because I was younger than my Codefendant (&) had a relatively Minor record; see. Pg. 10 &, 11, (&) 12, over my interlocutory (&) omitted Complaints!

The Govt. asserted that I did NOT understand Killing someone to assault or facilitate a violent crime w/ or w/out a firearm is aggravated murder; which I denied in pre-trial consult (& asserted that I had been a intern as a minor at Arkansas Bank & Trust for my grandparents friend (& was aware of the core principles (& WOULD NOT have endorsed the statements attributed to me (& unfortunately; although the points were referenced in cross-examination see. Pg. 13, the context (&) effect was lost by Counsels admissions of guilt which he never rebutted.

The Gov't further states that the "McCoy" decisions does not reply retroactively &, thats simply not true in this case because Trial Counsels admissions of guilt, over-whelmed my Not Guilty Plea, foreclosing on my right to have a Jury consider me innocent, because obviously they couldn't. ... &, therefore, "McCoy" should restore my right to effectively appeal a unduly rend-ered conviction being maintained in viol-ation of The 5th, 6th, 7th Amendment... See pg. 14, 15, & 16., Please "Nexus" ruling.

Again, I reiterate; I denied the statements attributed to me in pre-trial; assisted w/forensic investigation which should've exonerated me & provides exquisite alibi details that resulted in a Not Guilty verdict on 5 other charges including 2 Counts of attempted murder &, I Plead NOT Guilty to this Case as well; &, intended to win!

Respectfully Submitted,

Signed _Jeffery W. Paul_
Jeffery Paul

6/24/19

Doc. 1

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

No. 19-1994

JEFFREY WILLIAM PAUL, Petitioner

v.

UNITED STATES, Respondent.

## RESPONSE IN OPPOSITION TO MOTION TO FILE A SUCCESSIVE § 2255 MOTION

The United States of America, by and through undersigned counsel, hereby submits this response in opposition to petitioner Jeffrey William Paul's request to file a successive motion for relief under 28 U.S.C. § 2255, filed May 14, 2019 ("Mot.").

### STATEMENT

On June 22, 1995, Jeffrey William Paul and an acquaintance, Trinity Ingle, followed 82-year-old Sherman Williams to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Williams, and then shot him in the head and shoulder, killing him.

On June 23, 1997, a jury in the Western District of Arkansas convicted Paul of aiding and abetting first degree murder within the special territorial jurisdiction of the United States (18 U.S.C. § 1111)███████████████████████████████████

1

DOC. 2.

Paul cannot make a prima facie case of error under *McCoy*, which held "that a defendant has the right to *insist* that counsel refrain from admitting guilt." 138 S. Ct. at 1505.  ~~False!~~  The record in *McCoy* left no ambiguity as to the defendant's effective insistence. "Throughout the proceedings, [McCoy] insistently maintained he was out of State" during the murders, which he attributed to corrupt police officers. *Id.* at 1506. He informed the trial court that his relationship with appointed counsel had "broken down irretrievably" and he obtained permission to proceed pro se until his parents could retain an attorney. *Id.* When informed, two weeks before trial, that the retained attorney intended to concede guilt, McCoy furiously insisted the attorney pursue acquittal. *Id.* On the eve of trial, McCoy sought to terminate counsel, who asked that the court relieve him if the defendant secured another attorney. *Id.* The court denied the request while stating that counsel had the power to determine the aims of the defense. *Id.* Consistent with that advice, counsel admitted during opening statement that the jury could not reasonably conclude McCoy had not killed the victims. *Id.*

In contrast to the clear statements that animated the *McCoy* decision, Paul does not identify any evidence, in or out of the record, that he forbade his attorneys from conceding his culpability. Instead, he observes that he refused to plead guilty and accept a life sentence. Mot. at 6. Neither of those actions brings this case within *McCoy*. ~~Unlike the defendant in that case, Paul made repeated pre-trial~~  False!

11

Doc. 3.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Case No. _____

---

## In re JEFFREY PAUL,

Movant.

---

## APPLICATION FOR LEAVE TO FILE SECOND OR SUCCESSIVE MOTION PURSUANT TO 28 U.S.C. § 2255(h)

---

### CAPITAL § 2255 PROCEEDINGS

SHAWN NOLAN
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

May 14, 2019

1

# FACTUAL BACKGROUND Doc. 4.

In June 1997, Mr. Paul was convicted of aiding and abetting murder in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) & 2 (Count 1). For the same killing, Mr. Paul, who was eighteen at the time of the crime, was also convicted of using a firearm during a federal "crime of violence…, to wit: a robbery in the national park, Hot Springs, Arkansas, on or about June 22, 1995," in violation of 18 U.S.C. § 924(c) & § 924(i)(1), *subsection redesignated as* § 924(j)(1)(1996)(Count 2). The indictment provided no notice as to which if any robbery statute constituted the underlying § 924(c) crime of violence. Nor is it apparent from the trial record that an extant robbery statute was even employed as the § 924(c) predicate. Both counts in the indictment carried a maximum sentence of death.

Prior to trial, the Government offered Mr. Paul a life sentence in exchange for a guilty plea. Petitioner rejected the offer despite trial counsel's repeatedly advising him that going to trial and denying guilt would increase the likelihood of the jury returning a sentence of death. Petitioner was adamant and unwavering, and, in trial counsel's view, completely nonsensical and irrational in his refusal to plead guilty and accept a life sentence. The manner in which Mr. Paul rejected trial counsel's advice to plead guilty was so bizarre and intense, trial counsel questioned whether or not he was competent to make this decision and go to trial.

4

commission or perpetration of a robbery; that the said robbery and killing took place on federal property and that, therefore, such crimes amount to violations of federal law.

The second count may be summarized by saying that it alleges that on or about the twenty-second day of June, 1995, the defendant, Jeffery William Paul, and another individual known to the grand jury, while aiding and abetting each other, did knowingly carry and use a firearm during and in relation to a robbery, a crime of violence; that he did so on about June 22, 1995, as set forth in count one of the indictment; that in the course of the robbery, he caused the death of Sherman Williams by shooting him with the firearm in the commission or perpetration of the said robbery and attempted commission or perpetration of the robbery that the said robbery, carrying and use of the firearm, and killing took place on federal property and that, therefore, such crime amounts to a violation of federal law.

Keep in mind that each count charges a separate crime. You must therefore consider each count separately and return a separate verdict for each count.

The defendant has plead not guilty to these charges. You will notice that both counts in the indictment allege that the defendant committed crimes mentioned therein while aiding and abetting another individual known to the grand jury. You were told that one Trinity Edward Ingle has been tried and convicted by another jury of similar charges relating to the death

Voice (?)
(Hw or his Samples)

Special Agent / FBI

Lavoie - Cross

29

Q Okay. Was the interview video taped?

A No, it was not. By rules and regulations of the F.B.I., we do not, I do not videotape without proper authorization.

Q And was it taped at all, audio taped?

A No, it was not.

Q Okay. Did you tell him that the more he cooperated the better it would be for him?

A I don't recall saying that to him.

Q Did you ever tell him that if he didn't do this murder that he wouldn't have to worry about going to jail?

A No, sir.

Q Did he tell you that he was worried about staying in jail, that he wanted out of jail?

A The following day -- this would have been August 23rd, when I went back to the Marshal Service to see him -- he told me that he couldn't do 20 years in prison for a murder that he only witnessed.

Other evidence linking Mr. Paul to the offense included a pair of "Reebok" brand sneakers, which were apparently owned by Mr. Paul, but had been loaned to Mr. Ingle and were recovered from Ingle at the time of his arrest. T. 567-68. Although examined, no blood was found on the sneakers. T. 608.

-12-

The government also contended that Appellant had blood on his shoes and/or clothes on the day of the offense. However, two government witnesses who saw him that day did not see any blood whatsoever on Mr. Paul. T. 670, 683,

While the government contended that Mr. Paul said he had kicked the victim in the head, T. 472, other evidence belied this fact. First, FBI Agent Tom Ross testified, and the government's serologist confirmed, that the Reebok shoes, GE 27 (T. 608), which Mr. Paul was supposedly wearing at the time of the offense had no trace of blood on them. T. 567-68, 608.

(2)    That the defendant has committed, attempted to commit, and/or threatened to commit other acts of violence in addition to the capital offenses committed in this case, including but not limited to the following:

(a)    An attempted armed robbery/murder at the Tri-States Liquor Store, Hot Springs, Arkansas on or about June 8, 1995.

YES _____

NO ___✓___

FOREPERSON

FOREPERSON

-6-

~~~~~~~~ - Because the FBI is looking for me. And Jeff allegedly says in one sentence, well I just killed a guy in Arkansas, Dan, and that's why I needed it.

Once again, Dan didn't follow up with a question, there was no reaction. Okay, that's a good explanation. But Mr. Coughlin was in trouble and once he got out the coast guard, he goes to California and a couple of FBI agents come to his door, said did you help Jeffery get a fake I.D.? He couldn't lie about it because it had his birth date on there. Yes, I did.

Well, Mr. Coughlin, you are in trouble because you helped harbor a fugitive. Now Mr. Coughlin is in trouble and how does he get himself out of this mess? He gets himself out of this mess by testifying against Jeffery and telling that yeah, Jeff admitted to me he killed someone in Arkansas.

Does he have an interest in the outcome of this case? Mr. Coughlin, he sure does because he has acquitted himself of any responsibility because he's offered evidence that Jeff confessed to him and, therefore, he will not be prosecuted for harboring a fugitive.

Chris LaPaglia. Now Ms. LaPaglia and Mr. Paul -- Jeffery met at Rivendale Psychiatric Center. I believe he did tell her something, but what he did tell her did not fit the facts. He did not say anything about a gun. All he said, according to her, was I killed a man and we kicked him and broke his neck. But remember what we know for sure: Mr. Williams' neck was not

Broken

Paul helped pull the body off the trail but even after that, keys were given to Mr. Ingle and he's the one that took the and decided to drive it with Mr. Paul as a passenger.

Now Jeff has been charged with a two count indictment. You've heard it twice already but I'm going to say it again: That on or about June 22, 1995, Jeff and Trinity Ingle, while aiding and abetting each other, committed the offense of murder in the first degree.

To sustain this charge, the Government must prove beyond a reasonable doubt the elements of this offense, and I'm not going to go through that at this point.

Also in Count 2 it is charged that on or about June 22, that Jeffery Paul and Trinity Ingle, while aiding and abetting each other, committed the offense of knowingly carrying a firearm in relation to a crime of violence.

And once again, the burden on the Government is to prove each element of both of these offenses beyond a reasonable doubt. But as you already know and as you, obviously from reading this-- what they're charged with, Jeff is not charged alone. It is not alleged that Jeff Paul committed this offense by himself. It is alleged that Jeff Paul and Trinity Ingle did commit these offenses together.

Now you already know that Trinity Ingle has been tried and convicted and sentenced to life in prison without possibility of release. And today you will have to decide, or in the days to



come you will have to decide whether Jeff did aid and abet Trinity Ingle in the commission of his offenses. That will be your burden, that will be your job, and you will be instructed as to that jury instruction. I'm going to read that just briefly.

"In order to have aided and abetted the commission of a crime, the person must before or at the time of the crime was committed; Number 1, had known the crime was being committed or going to be committed; and two, knowingly have acted in some way for the purpose of causing, encouraging or aiding in the commission of a crime."

Now the Government, once again, must prove these elements beyond a reasonable doubt. And as you read that instruction, as you consider arguments at the conclusion of the guilt phase, I want you to consider his statement where he did plan on robbing this man but did not intend and did not plan on killing anyone.

Now when you listen to the testimony and you've observed the exhibits and when you're instructed as to the law by Judge Hendren, I want you to remember the promises that you made during jury selection; Number 1, that each and every one of you will promise that you will listen attentively to evidence in this case and that you will follow the law as stated, whether you agree with it or not; that you will not allow prejudice or emotion to influence you; and that you will listen to the case with a fair and open mind. And at the conclusion of the trial, all I can

Sec.
1111. Murder. ✓
1112. Manslaughter.
1113. Attempt to commit murder or manslaughter.
1114. Protection of officers and employees of the United States.
1115. Misconduct or neglect of ship officers.
1116. Murder or manslaughter of foreign officials, official guests, or internationally protected persons.
1117. Conspiracy to murder.
1118. Murder by a Federal prisoner.
1119. Foreign murder of United States nationals.
1120. Murder by escaped prisoners.
1121. Killing persons aiding Federal investigations or State correctional officers.
1122. Protection against the human immunodeficiency virus.

## § 1111. Murder ✓

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

(c) For purposes of this section—

(1) the term "assault" has the same meaning as given that term in section 113;

(2) the term "child" means a person who has not attained the age of 18 years and is—

(A) under the perpetrator's care or control; or
(B) at least six years younger than the perpetrator;

(3) the term "child abuse" means intentionally or knowingly causing death or serious bodily injury to a child;

(4) the term "pattern or practice of assault or torture" means assault or torture engaged in on at least two occasions;

(5) the term "serious bodily injury" has the meaning set forth in section 1365; and

(6) the term "torture" means conduct, whether or not committed under the color of law, that otherwise satisfies the definition set forth in section 2340(1).

(June 25, 1948, c. 645, 62 Stat. 756; Oct. 12, 1984, Pub.L. 98–473, Title II, § 1004, 98 Stat. 2138; Nov. 10, 1986, Pub.L. 99–646, § 87(c)(4), 100 Stat. 3623; Nov. 14, 1986, Pub.L. 99–654, § 3(a)(4), 100 Stat. 3663; Nov. 18, 1988, Pub.L. 100–690, Title VII, § 7025, 102 Stat. 4397; Sept. 13, 1994, Pub.L. 103–322, Title VI, § 60003(a)(4), 108 Stat. 1969; Apr. 30, 2003, Pub.L. 108–21, Title I, § 102, 117 Stat. 652.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1986 Acts. Amendment by section 87 of Pub.L. 99–646 effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

## § 1112. Manslaughter

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of voluntary manslaughter, shall be fined under this title or imprisoned not more than 15 years, or both;

Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than 8 years, or both.

(June 25, 1948, c. 645, 62 Stat. 756; Sept. 13, 1994, Pub.L. 103–322, Title XXXII, § 320102, Title XXXIII, § 330016(1)(H), 108 Stat. 2109, 2147; Oct. 11, 1996, Pub.L. 104–294, Title VI, § 604(b)(13), 110 Stat. 3507; Jan. 7, 2008, Pub.L. 110–177, Title II, § 207, 121 Stat. 2538.)

### HISTORICAL AND STATUTORY NOTES

**Effective and Applicability Provisions**

1996 Acts. Amendment by section 604 of Pub.L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub.L. 104–294, set out as a note under section 13 of this title.

Exhibit ____ ( ) 7th Circ.



would come through here a lot, you know, on their way to where they might be going, and my children did not want them to leave. You know, once they got here, they wanted granny and granddaddy to stay. And my other brothers were not at home at the time and they just felt like they needed to be over here to help me with the boys.

Q. You needed help?

A. I needed help.

Q. Financially?

A. Financially and emotionally.

Q. Dennis was not there very often?

A. No, sir.

Q. They moved to Hot Springs. They have a certain job over here, do they not?

A. Yes, sir, they did.

Q. And what was that?

A. They were caretakers for Mr. Cecil Cupp.

Q. With the Arkansas Bank and Trust?

A. With Arkansas Bank and Trust.

Q. Do y'all eventually move to Hot Springs also?

A. Yes.

Q. Where do y'all move to here in Hot Springs?

A. We moved on Long Beach Drive.

Q. Is that close to where your folks were?

A. That was right across the cove from Mr. Cupp's house. It

DOC. 14.

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## McCOY *v.* LOUISIANA

### CERTIORARI TO THE SUPREME COURT OF LOUISIANA

No. 16–8255.  Argued January 17, 2018—Decided May 14, 2018

Petitioner Robert McCoy was charged with murdering his estranged wife's mother, stepfather, and son.  McCoy pleaded not guilty to first-degree murder, insisting that he was out of State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong.  Although he vociferously insisted on his innocence and adamantly objected to any admission of guilt, the trial court permitted his counsel, Larry English, to tell the jury, during the trial's guilt phase, McCoy "committed [the] three murders."  English's strategy was to concede that McCoy committed the murders, but argue that McCoy's mental state prevented him from forming the specific intent necessary for a first-degree murder conviction.  Over McCoy's repeated objection, English told the jury McCoy was the killer and that English "took [the] burden off of [the prosecutor]" on that issue. McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom.  The jury found him guilty of all three first-degree murder counts.  At the penalty phase, English again conceded McCoy's guilt, but urged mercy in view of McCoy's mental and emotional issues.  The jury returned three death verdicts. Represented by new counsel, McCoy unsuccessfully sought a new trial.  The Louisiana Supreme Court affirmed the trial court's ruling that English had authority to concede guilt, despite McCoy's opposition.

*Held*: The Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Pp. 5–13.

(a) The Sixth Amendment guarantees to each criminal defendant "the Assistance of Counsel for his defence."  The defendant does not



surrender control entirely to counsel, for the Sixth Amendment, in "grant[ing] to the accused personally the right to make his defense," "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." *Faretta* v. *California*, 422 U. S. 806, 819–820. The lawyer's province is trial management, but some decisions are reserved for the client—including whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal. Autonomy to decide that the objective of the defense is to assert innocence belongs in this reserved-for-the-client category. Refusing to plead guilty in the face of overwhelming evidence against her, rejecting the assistance of counsel, and insisting on maintaining her innocence at the guilt phase of a capital trial are not strategic choices; they are decisions about what the defendant's objectives in fact *are.* See *Weaver* v. *Massachusetts*, 582 U. S. ___, ___. Counsel may reasonably assess a concession of guilt as best suited to avoiding the death penalty, as English did here. But the client may not share that objective. He may wish to avoid, above all else, the opprobrium attending admission that he killed family members, or he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration. See Tr. of Oral Arg. 21–22. Thus, when a client makes it plain that the objective of "his defence" is to maintain innocence of the charged criminal acts and pursue an acquittal, his lawyer must abide by that objective and may not override it by conceding guilt. Pp. 5–8.

(b) *Florida* v. *Nixon*, 543 U. S. 175, is not to the contrary. Nixon's attorney did not negate Nixon's autonomy by overriding Nixon's desired defense objective, for Nixon "was generally unresponsive" during discussions of trial strategy and "never verbally approved or protested" counsel's proposed approach. *Id.,* at 181. He complained about counsel's admission of his guilt only after trial. *Id.,* at 185. McCoy, in contrast, opposed English's assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court. Citing *Nix* v. *Whiteside*, 475 U. S. 157, the Louisiana Supreme Court concluded that English's refusal to maintain McCoy's innocence was necessitated by a Louisiana Rule of Professional Conduct that prohibits counsel from suborning perjury. But in *Nix*, the defendant told his lawyer that he intended to commit perjury. Here, there was no avowed perjury. English harbored no doubt that McCoy believed what he was saying; English simply disbelieved that account in view of the prosecution's evidence. Louisiana's ethical rules might have stopped English from presenting McCoy's alibi evidence if English knew perjury was involved, but Louisiana has identified no ethical rule requiring English to admit McCoy's guilt over McCoy's objection. Pp. 8–11.

DOC-16.

Syllabus

(c) The Court's ineffective-assistance-of-counsel jurisprudence, see *Strickland* v. *Washington*, 466 U. S. 668, does not apply here, where the client's autonomy, not counsel's competence, is in issue. To gain redress for attorney error, a defendant ordinarily must show prejudice. See *id.*, at 692. But here, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative. Violation of a defendant's Sixth Amendment-secured autonomy has been ranked "structural" error; when present, such an error is not subject to harmless-error review. See, *e.g.*, *McKaskle* v. *Wiggins*, 465 U. S. 168, 177, n. 8; *United States* v. *Gonzalez-Lopez*, 548 U. S. 140; *Waller* v. *Georgia*, 467 U. S. 39. An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest, such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver*, 582 U. S., at __ (citing *Faretta*, 422 U. S., at 834). Counsel's admission of a client's guilt over the client's express objection is error structural in kind, for it blocks the defendant's right to make a fundamental choice about his own defense. See *Weaver*, 582 U. S., at __. McCoy must therefore be accorded a new trial without any need first to show prejudice. Pp. 11–12.

2014–1449 (La. 10/19/16), 218 So. 3d 535, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed a dissenting opinion, in which THOMAS and GORSUCH, JJ., joined.